884 A.2d 848

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**James LAMBERT, Appellant.**

Supreme Court of Pennsylvania.

Submitted June 2, 2005.

Decided Oct. 18, 2005.

462

464

Daniel Silverman, for James Lambert, appellant.

Amy Zapp, Hugh J. Burns, for the Com. of PA, appellee.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice CASTILLE.

Appellant James Lambert appeals from the order of the Court of Common Pleas dismissing his second petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* For the reasons set forth below, we find that appellant is not entitled to relief and, accordingly, we affirm the order of the PCRA court.

On April 25, 1984, appellant was convicted of first degree murder, robbery, conspiracy, and related offenses in connection with the murders of two patrons during a robbery of a bar in Philadelphia.[1] Following a penalty-phase hearing, the jury returned a sentence of death for each murder count. On direct appeal, this Court affirmed appellant's convictions and sentences. *Lambert,* 529 Pa. 320, 603 A.2d 568. Appellant then filed his first PCRA petition on June 15, 1995. The PCRA court dismissed the petition without a hearing on January 29, 1998. This Court affirmed on appeal. *Commonwealth v. Lambert,* 568 Pa. 346, 797 A.2d 232 (2001) (Opinion Announcing the Judgment of the Court). On March 15, 2002, this Court denied appellant's petition for reconsideration. *Commonwealth v. Lambert,* 2002 Pa. Lexis 1776 (Pa.2002). On May 8, 2002, appellant filed the instant PCRA petition, his second, which the PCRA court dismissed. Appellant appealed to this Court.

---

1. The facts underlying appellant's conviction are set forth in detail in this Court's opinion on direct appeal. *Commonwealth v. Lambert,* 529 Pa. 320, 603 A.2d 568 (1992).

 A PCRA petition, including a second or subsequent petition, must be filed within one year of the date that judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). A judgment becomes final for purposes of the PCRA "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). If a PCRA petition is untimely, neither this Court nor the trial court has jurisdiction over the petition. *Commonwealth v. Murray*, 562 Pa. 1, 753 A.2d 201, 203 (2000). "Without jurisdiction, we simply do not have the legal authority to address substantive claims." *Commonwealth v. Fisher*, 582 Pa. 276, 870 A.2d 864, 869 (2005).

Here, appellant concedes that he did not file the instant PCRA petition within one year of the date that his judgment became final. Appellant contends, however, that his petition is timely as it fits within two of the three exceptions to the PCRA's timeliness requirements provided in Section 9545(b)(1). That Section provides in full:

Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1). Moreover, any petition invoking one or more of these timeliness exceptions must be filed within sixty days from the date that the claim could have been presented. 42 Pa.C.S. § 9545(b)(2).

Appellant argues that the claims raised in his serial petition fall within both the "governmental interference" exception, 42 Pa.C.S. § 9545(b)(1)(i), and the "newly discovered evidence" exception, 42 Pa.C.S. § 9545(b)(1)(ii), to the timeliness provision of the PCRA, because the Commonwealth withheld impeachment and exculpatory evidence, thus violating *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, appellant raises seven *Brady* claims, relying on notations found in several police activity sheets and other documents contained in the archived police file concerning this case. Appellant contends that the Commonwealth withheld valuable impeachment and exculpatory evidence contained in these undisclosed documents, which, according to appellant, demonstrates that several of the Commonwealth's key witnesses lied at trial, and that appellant was in fact innocent of any crime.

In response, the Commonwealth argues that in order for appellant's PCRA petition to fall within the cited timeliness exceptions, he must actually establish a meritorious *Brady* claim. The Commonwealth argues that the PCRA court correctly determined that each *Brady* claim asserted by appellant was without merit and, thus, appellant's petition is untimely. The newly discovered evidence exception, set forth in Section 9545(b)(1)(ii), however, does not require a merits analysis of the claim in order for it to qualify as timely and warranting merits review. The exception merely requires that the "facts" upon which such a claim is predicated must not have been known to appellant, nor could they have been ascertained by due diligence. Appellant asserts that the "facts" upon which his *Brady* claims are based derive from documents contained in this case's archived police file, which were not "known" to him until after the filing of his initial PCRA petition. In accordance with this Court's decision in

*Commonwealth v. Lark,* 560 Pa. 487, 746 A.2d 585 (2000),[2] appellant's counsel filed the present serial PCRA petition on May 8, 2002, which was within the requisite sixty days of this Court's denial of appellant's reconsideration petition following our decision on his first PCRA petition on March 15, 2002. 42 Pa.C.S. § 9545(b)(2). Therefore, so long as the facts set forth in the police file were not otherwise known to appellant, the *Brady* claims he asserts are "timely" under the newly discovered evidence exception. In this case, it appears that six of appellant's seven *Brady* complaints are reviewable on the merits, while the seventh is time-barred. However, because we find that appellant's "timely" *Brady* claims are without merit, we conclude that the PCRA court properly dismissed appellant's serial PCRA petition.

The manner in which appellant obtained the alleged impeachment and exculpatory evidence underlying his *Brady* claims was extraordinary. In October 2001, proceedings were commenced before the Honorable D. Webster Keogh, the Supervising Judge of the Criminal Division of the Court of Common Pleas of Philadelphia, following a formal complaint filed by the Commonwealth regarding the improper use of subpoenas by the Federal Capital Habeas Corpus Unit of the Defender Association of Philadelphia ("Federal Defender") to obtain archived police files. At these proceedings, it was revealed that between June and October 2001, the Federal Defender improperly subpoenaed the original police files for approximately twenty-five capital cases from the Philadelphia

---

**2.** In *Lark,* this Court established the following procedural rule governing serial petitions:

> [W]hen an appellant's PCRA appeal is pending before a court, a subsequent PCRA petition cannot be filed until the resolution of review of the pending PCRA petition by the highest state court in which review is sought, or upon the expiration of the time for seeking such review. If the subsequent petition is not filed within one year of the date when the judgment became final, then the petitioner must plead and prove that one of the three exceptions to the time bar under 42 Pa.C.S. § 9545(b)(1) applies. The subsequent petition must also be filed within sixty days of the date of the order which finally resolves the previous PCRA petition, because this is the first "date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

*Lark,* 746 A.2d at 588 (footnote omitted).

City Archivist, apparently in an effort to circumvent the discovery requirements set forth in Pa.R.Crim.P. 902(E). On October 29, 2001, Judge Keogh ordered that the archived police files obtained by the Federal Defender be sealed, thus precluding the Federal Defender from disclosing the contents of the files they unlawfully secured. In a decision letter dated February 8, 2002, Judge Keogh concluded that the Federal Defender's actions constituted an abuse of the subpoena power to such an improper and illegal extent that he referred the matter to the Pennsylvania Disciplinary Board for appropriate action.

The original police file for the instant case was one of the archived police files obtained by the Federal Defender. In the instant serial PCRA petition, appellant's counsel, who is not contractually or otherwise affiliated with the Federal Defender, stated that while appellant's appeal of his first PCRA petition was pending before this Court, he became aware that the Federal Defender, who had been assisting counsel in the litigation of this case, were in possession of the original police file. Counsel was informed by the Federal Defender that the file allegedly contained unspecified *Brady* material. In accordance with *Lark*, 560 Pa. 487, 746 A.2d 585, counsel filed the present PCRA petition within the requisite sixty days of this Court's denial of appellant's reconsideration petition following our decision on his first PCRA petition. The PCRA court, per the Honorable John J. Poserina, Jr., scheduled an evidentiary hearing for September 24, 2002 for the limited purpose of hearing testimony from an attorney from the Federal Defender regarding alleged undisclosed exculpatory evidence contained in the archived police file. On September 16, 2004, however, PCRA counsel filed a motion submitting that he required the archived police file in order to prepare for the evidentiary hearing. Attached to the motion was an order directing the Federal Defender to turn over the police file to counsel. The motion did not mention Judge Keogh's existing order sealing all archived police files obtained by the Federal Defender. The PCRA court issued the order and appellant thereby obtained the archived police file from the Federal

Defender. Counsel subsequently filed a supplement to his serial PCRA petition on September 24, 2002, asserting nine *Brady* claims.[3]

■ The law governing alleged *Brady* violations is well-settled. In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976), and that the duty may encompass impeachment evidence as well as directly exculpatory evidence, *United States v. Bagley*, 473 U.S. 667, 676–77, 105 S.Ct. 3375, 3380–81, 87 L.Ed.2d 481 (1985). Furthermore, the prosecution's *Brady* obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution. *Kyles v. Whitley*, 514 U.S. 419, 438, 115 S.Ct. 1555, 1568, 131 L.Ed.2d 490 (1995); *Commonwealth v. Burke*, 566 Pa. 402, 781 A.2d 1136, 1142 (2001).

■ On the question of materiality, the Court has noted that "[s]uch evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999) (quoting *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383). The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. "Rather, the question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Strickler*,

---

**3.** Two of the nine alleged *Brady* violations have not been raised or discussed by appellant in his brief on appeal. Therefore, these claims are not before us.

527 U.S. at 290, 119 S.Ct. at 1952 (quoting *Kyles*, 514 U.S. at 435, 115 S.Ct. at 1566). "Thus, there are three necessary components that demonstrate a violation of the *Brady* strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued." *Burke*, 781 A.2d at 1141 (citing *Strickler*, 527 U.S. at 281–82, 119 S.Ct. at 1948).

Importantly, the Court has noted that the duty imposed upon the prosecution under *Brady* is a limited one. *See, e.g., Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977) ("[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one"); *see also Kyles*, 514 U.S. at 436–37, 115 S.Ct. at 1567 ("[T]he Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense. . . . We have never held that the Constitution demands an open file policy . . . ."). This Court has also recognized *Brady's* limited requirements, and has noted that *Brady* does not grant a criminal defendant unfettered access to the Commonwealth's files. *See Commonwealth v. Edmiston*, 578 Pa. 284, 851 A.2d 883, 887 n. 3 (2004) (defendant has no general right under the Constitution or *Brady* to search Commonwealth files); *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167, 1176 (1999) ("[T]he Commonwealth is, in the first instance, the judge of what information must be disclosed. . . . 'Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance.' ") (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 59, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987)); *Commonwealth v. Counterman*, 553 Pa. 370, 719 A.2d 284, 297 (1998), *cert. denied*, 528 U.S. 836, 120 S.Ct. 97, 145 L.Ed.2d 82 (1999) (*Brady* is not a general rule of discovery in criminal cases).

As noted above, appellant raises seven *Brady* claims based on previously undisclosed documents found in the archived police file. In response, the Commonwealth argues that each *Brady* claim is meritless, and that appellant's arguments in support of each alleged violation either mischaracterize the

content of the documents, or are based on mere speculation. We address each *Brady* claim *seriatim.*

■ Appellant first claims that the Commonwealth violated *Brady* by not disclosing the police activity sheet of October 25, 1982. In this document, there is a notation that Commonwealth witness Bernard Jackson, who was the getaway driver during the robbery and an original codefendant of appellant herein, named Lawrence Woodlock as a codefendant. Appellant argues that this "statement" by Jackson is exculpatory as it is evidence that someone other than himself was involved in the robbery, or at a minimum, that someone other than himself was the shooter. Appellant argues that this statement supported the defense theory that Jackson simply made up a third robber in order to reduce the culpability of codefendant Bruce Reese. Appellant further argues that this statement could have been used to impeach Jackson's testimony at trial because it established that Jackson provided Woodlock's name prior to identifying appellant as the third robber.

The Commonwealth counters that the "statement" by Jackson in this document was actually an "ambiguously worded notation" which simply states that Jackson had named Woodlock as a codefendant without specifying whether he was naming Woodlock as a codefendant in this robbery or a previous robbery. The Commonwealth notes that Woodlock's name appears nowhere else in the police files, was not mentioned by any witness at trial, and was not mentioned in any of the formal statements offered by Jackson to the police concerning the robbery.[4] The Commonwealth further notes that Jackson's testimony was extensively impeached at trial by both appellant and codefendant Reese; therefore, the ambiguous reference to Woodlock in this document would not have discredited him any further.

4. During the investigation, Jackson offered four separate statements to the police. On October 14, 1982, Jackson identified himself, Reese, and "the dude" as the three participants in the robbery. On October 22, 1982, Jackson identified "the dude" as "Monk," which was appellant's nickname. In his third and fourth statements given on January 14, 1983 and February 6, 1983, Jackson identified "Monk" as appellant.

The PCRA court concluded that this document was not material as it did not create a reasonable probability that the result of the proceeding would have been different had it been disclosed. *Strickler*, 527 U.S. at 281, 119 S.Ct. at 1948. We agree. Appellant's claim that Jackson's reference to Woodlock automatically means that someone other than himself committed the shootings and robbery is purely speculative at best. The Commonwealth accurately notes that the police must not have had reason to consider Woodlock a potential codefendant in this case as his name is not mentioned anywhere else in the police investigation files. Furthermore, appellant's argument that this document reveals that Jackson named Woodlock as a codefendant prior to identifying appellant is inaccurate. In his second formal statement to police on October 22, 1982, three days prior to the document at issue, Jackson identified the third participant in the robbery as "Monk," appellant's nickname. Moreover, this document would not have materially furthered the impeachment of Jackson at trial as he was already extensively impeached by both appellant and Reese. Indeed, each codefendant cross-examined Jackson on the following: every inconsistency in his four police statements; that he was testifying on behalf of the Commonwealth pursuant to a plea bargain; and that he had several open robbery charges still pending and his testimony was motivated by a desire to receive lenient sentences for those crimes. Any additional impeachment of Jackson arising from a police notation would have been cumulative. Accordingly, the Commonwealth did not violate *Brady* by not disclosing this police activity sheet as appellant has failed to show its materiality.

Appellant's next *Brady* claim concerns the Commonwealth's nondisclosure of the police activity sheet of October 12, 1982. This document contains a photograph of Jackson with a handwritten notation to the right of picture stating "driver/witness not shooter by door." Appellant concedes that the document does not reveal the source of the notation, but speculates that it might derive from a statement made by Jackson to the police, and if it was, it would directly contradict

Jackson's testimony that he remained outside the bar in the car and did not witness the shootings. Appellant argues that this notation both corroborates his defense theory at trial that Jackson and Reese committed the robbery by themselves, and that it could have been used to impeach Jackson's testimony at trial.

As both the Commonwealth and PCRA court accurately note, appellant's interpretation of this notation is purely speculative and not supported by the record. Appellant essentially concedes as much, but nonetheless argues that the Commonwealth was obligated to disclose it, and if it had been disclosed defense investigation may have led to favorable exculpatory evidence. Neither this Court, nor the United States Supreme Court, however, have ever held that *Brady* requires the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments or defenses. *See Commonwealth v. Chambers*, 570 Pa. 3, 807 A.2d 872, 887 (2002) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense.") (quoting *Agurs*, 427 U.S. at 109–10, 96 S.Ct. at 2400). Accordingly, the Commonwealth did not violate *Brady* by not disclosing this document.

■ Appellant claims that the Commonwealth committed a third *Brady* violation by not disclosing the police activity sheet of January 14, 1983. This document indicated that Jackson had failed a polygraph examination regarding the identity of the person who possessed the murder weapon during the robbery and which persons made incriminating statements to him following the robbery and shootings. The document further indicated that Jackson changed his story after being confronted by the police that he failed the polygraph test. The record reflects, however, that the Commonwealth disclosed to trial counsel, during pre-trial discovery, Jackson's actual police statement from January 14, 1983, which explicitly stated that Jackson failed the polygraph test and then changed his story. Thus, there was no *Brady* violation in connection to this information. *Commonwealth v. Morris*, 573

Pa. 157, 822 A.2d 684, 696 (2003) (no *Brady* violation occurs where appellant knew or could have uncovered evidence with reasonable diligence). Moreover, because the facts underlying this claim were known or knowable to appellant, it does not qualify under the newly discovered evidence exception and, thus, is untimely. *See Commonwealth v. Johnson*, 580 Pa. 594, 863 A.2d 423, 425–26 (2004).

Appellant next claims that the Commonwealth violated *Brady* by not disclosing the police activity sheet of September 24, 1982, which indicated that an individual named Snyder informed the police that his brother had told him that Paul and Robin Adams had purchased a gun and planned to rob a bar. Upon learning of the robbery and murders at issue in this case, Snyder speculated that the Adams' had committed the crimes. Appellant contends that this document proves that someone other than himself committed the robbery and murders. Contrary to appellant's assertion, the information contained in this document was not evidence that someone other than appellant committed the instant crimes. As the Commonwealth notes, the information contained in this document was an initial lead based on hearsay and speculation. As noted by this Court, the prosecution is not required to disclose to the defense "every fruitless lead followed by investigators of a crime." *Commonwealth v. Crews*, 536 Pa. 508, 640 A.2d 395, 406 (1994). Additionally, inadmissible evidence cannot be the basis for a *Brady* violation. *See Wood v. Bartholomew*, 516 U.S. 1, 6, 116 S.Ct. 7, 10, 133 L.Ed.2d 1 (1995) (reversing grant of habeas corpus relief where evidence withheld by prosecution was inadmissible; thus, disclosure not "reasonably likely" to have resulted in different outcome); *Commonwealth v. Mitchell*, 576 Pa. 258, 839 A.2d 202, 216 (2003) (inadmissible evidence not material under *Brady*). Accordingly, the Commonwealth did not violate *Brady* by not disclosing this document.

Appellant's next *Brady* claim concerns the Commonwealth's nondisclosure of the police activity sheet of September 23, 1982, in which the police noted their intention to

administer polygraph examinations to the barmaids working on the evening of the robbery. Appellant speculates that this document demonstrates that the police believed these witnesses were lying or that the robbery may have been an "inside" job. Appellant's argument as to what the police supposedly believed is based on mere conjecture and he fails to explain how this information was admissible, exculpatory, or favorable. Accordingly, this claim fails.

Appellant next claims that the Commonwealth violated *Brady* by not disclosing police composite sketches which, in appellant's view, do not resemble appellant but, in fact, closely resemble Jackson. This claim, bottomed upon appellant's own subjective opinion, is utterly meritless; evidence in the possession of the prosecution is not exculpatory merely because appellant so labels it. *Commonwealth v. Gee*, 467 Pa. 123, 354 A.2d 875, 878 (1976).

Appellant's seventh *Brady* claim concerns the Commonwealth's nondisclosure of a February 18, 1983 statement made by Marie Green, in which she failed to pick out appellant's picture from a photo array. Green was one of the three barmaids working the night of the robbery. Green was not an identification witness for the Commonwealth, and testified at trial that she did not see the faces of the perpetrators during the robbery. The PCRA court correctly concluded that, at trial, Green's prior inability to identify appellant from a photo array would not have been admissible. As we have noted, inadmissible evidence cannot be the basis for a *Brady* violation. *See Mitchell*, 839 A.2d at 216.

In addition to his substantive claims, appellant also argues that he is entitled to relief because of the cumulative impact of each *Brady* violation raised in the instant PCRA petition along with the single *Brady* claim he raised in his first PCRA petition. (In his first PCRA petition, appellant claimed that the Commonwealth violated *Brady* by misrepresenting the terms and conditions of the plea bargain extended to Jackson for his testimony.) Appellant's claim fails. The cumulative impact of meritless *Brady* claims cannot be grounds for

relief. Additionally, appellant's attempt to re-raise the *Brady* claim contained in his first PCRA petition is fruitless as it was previously litigated. *See* 42 Pa.C.S. § 9544(a)(3) (a claim is previously litigated if "it has been raised and decided in a proceeding collaterally attacking the conviction or sentence").

■ Appellant also raises one procedural claim on appeal. Appellant asserts that the PCRA court erred by not ruling on his request for discovery which sought a copy of the District Attorney's entire file, memoranda, or documents in the Commonwealth's possession that refer to any of the documents appellant characterized as *Brady* material in the instant PCRA petition, and information on the current whereabouts of any police officers mentioned in the alleged *Brady* material. Appellant contends that the revelation of the evidence found in the archived police file establishes the necessary "good cause" for discovery under Pa.R.Crim.P. 902(E). Appellant's claim is meritless as he misapprehends the requisite showing required to obtain discovery for a second PCRA petition.

Rule 902(E), entitled "Requests for Discovery," provides in full:

(1) Except as provided in paragraph (E)(2), no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of exceptional circumstances.

(2) On the first counseled petition in a death penalty case, no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of good cause.

Pa.R.Crim.P. 902(E). Paragraph two is inapplicable because the instant petition is appellant's second counseled petition. Therefore, appellant was required to satisfy paragraph one's standard of "exceptional circumstances" in order to be granted discovery by the PCRA court. Since appellant does not even allege that he demonstrated this required showing, his claim that the PCRA court erred by not granting his discovery request is unfounded.

478

Accordingly, we conclude that appellant's claims in his serial PCRA petition are either time-barred or lack merit. We therefore affirm the order of the PCRA court dismissing appellant's serial petition.

Chief Justice CAPPY, and Justices NIGRO, NEWMAN, SAYLOR, EAKIN and BAER were with the opinion.