Justice Breyer,
with whom Justice Ginsburg and Jus­tice Kagan join,
dissenting.
The Court grants the Commonwealth of Pennsylvania’s pe­tition for certiorari and sends this case back to the Court of Appeals for the Third Circuit, primarily because the Court believes that the “Circuit overlooked the determination of the state courts that the [police] notations were ... ‘entirely ambiguous.’ ” Ante, at 524 (quoting App. to Pet. for Cert. 34, 36). I cannot agree.
For one thing, I cannot accept that the “notations” at issue are “entirely ambiguous.” I attach a copy of the relevant police notation. See Appendix, infra. The notation clearly refers to this case, not to some other ease. It sets forth the file number of this investigation, the investigators of this crime, the victims of this murder, and the potential witnesses of these events. It does not refer specifically to any other robbery. The notation says that “[a] [pjhoto display was shown to . . . [witnesses in this case],” and it specifies that the “[p]hoto display contained a Lawrence WOODLOCK.” In this context, the words must refer to a display that in­cluded persons potentially involved in this robbery. That being.so, the most natural reading of the statement, “Mr. WOODLOCK is named as co-defendant by Bernard JACK­SON,” is that it too refers to this murder and not to some other crime. Ibid.
For another thing, the Circuit did not “overloo[k] the de­termination of the state courts that the notations were . . . ‘ambiguous.’” Ante, at 524 (quoting the Federal District *527 Court, App. to Pet. for Cert. 34, 36; emphasis added). There were no such state-court “determination^].” Ante, at 524. Rather, the state trial court wrote that the notation was not material for Brady purposes only because “Jackson was com­prehensively impeached” at trial and “it is not reasonable to believe that Jackson’s further inconsistency found only in a police activity sheet and not in any of his statements to police would have caused the jury to discredit him.” Record 228 (emphasis added). As the italicized words make clear, if the trial court expressed any view about ambiguity, it thought that the police notation was not ambiguous.
The Pennsylvania Supreme Court did point out that the Commonwealth argued that the document was “‘ambigu­ously worded.’” Commonwealth v. Lambert, 584 Pa. 461, 472, 884 A. 2d 848, 855 (2005). But the court did not adopt this rationale. Rather, it found the document not material with respect to impeachment because “[a]ny additional im­peachment of Jackson arising from a police notation would have been cumulative.” Id., at 473, 884 A. 2d, at 856. The Third Circuit disagreed with the state courts in respect to this last-mentioned holding. But this Court does not take issue with the Third Circuit on this point. The Court points out, instead, that the Pennsylvania Supreme Court used the word ‘“speculative.”’ Ante, at 523. But in context it is clear that the court used that word to refer to Lambert’s claim that the notation showed that he was innocent. With respect to that claim (not at issue here), the court wrote: “[Lambert’s] claim that Jackson’s reference to Woodlock au­tomatically means that someone other than himself com­mitted the shootings and robbery is purely speculative at best.” 584 Pa., at 473, 884 A. 2d, at 855. And it supported the “speculative” nature of the innocence claim by pointing out that Woodlock’s name “is not mentioned anywhere else in the police investigation files.” Ibid. There is no sugges­tion that the notation contained the argued ambiguity.
*528 Finally, the Circuit questioned the strength of the case against Lambert. See Lambert v. Beard, 633 F. 3d 126, 135-136 (CA3 2011). It pointed out that the case against Lambert was largely based on Jackson’s testimony, explain­ing that “without Jackson’s statements to the police, the Commonwealth could not have indicted Lambert on these charges.” Id., at 131. Yet Jackson had made “four prior inconsistent statements to the police about who did what and who said what on the night in question,” and he had admitted that his goal in testifying was “to save himself from a death sentence.” Ibid. The Circuit could not “help but observe that the evidence is very strong that Reese, not Lambert, was the shooter, even assuming that Lambert (and not Jack­son, as two of the barmaids testified) was in the Prince’s Lounge that night.” Id., at 135. The Circuit stated: “One wonders how the Commonwealth could have based this case of first-degree murder on a Bernard Jackson.” Id,., at 131. These statements suggest that the Commonwealth’s case against Lambert was unusually weak. If the Common­wealth was wrong, an innocent man has spent almost 30 years in prison under sentence of death for a crime he did not commit.
We do not normally consider questions of the type pre­sented here, namely, fact-specific questions about whether a lower court properly applied the well-established legal principles that it sets forth in its opinion. See Kyles v. Whitley, 514 U. S. 419, 460 (1995) (Scalia, J., dissenting) (An “intensely fact-specific case in which the court below unquestionably applied the correct rule of law and did not unquestionably err” is “precisely the type of case in which we are most inclined to deny certiorari”). And, for the rea­sons I have stated, I believe the Court is ill advised to grant certiorari in this case.
I would deny the Commonwealth’s petition for a writ of certiorari.
*529 APPENDIX
[[Image here]]