J-S47005-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOE R. JENKINS | : | |
| | : | |
| Appellant | : | No. 873 EDA 2024 |

Appeal from the PCRA Order Entered March 1, 2024
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-00005659-2018

BEFORE:  KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED APRIL 25, 2025**

Joe R. Jenkins ("Jenkins") appeals *pro se* from the order denying his first petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

We set forth, in relevant part, the following factual and procedural history.  Officers from the Nether Providence Township Police Department were conducting narcotics surveillance, when they observed a white male on his cell phone pacing back and forth in the middle of the street, after which a black vehicle pulled up, and the male entered the back seat.  Officers attempted to initiate a traffic stop, but the black vehicle fled at a high rate of speed into the path of oncoming police vehicles.  It maneuvered in and out of traffic, eventually causing a multi-vehicle accident. Jenkins, the driver, was

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

attempting to exit the vehicle, when he was apprehended in possession of what was later determined to be cocaine, a "large amount" of cash, and the key fob from the vehicle. There were two other passengers in the vehicle. Patrolman James Irey ("Officer Irey") later executed a search warrant and found a "large amount" of controlled substances and cash in the vehicle. *See generally* Criminal Complaint, Affidavit of Probable Cause, 7/13/18, at 1-2.

The Commonwealth filed an information in October 2018 charging Jenkins with several offenses, including possession of a controlled substance with intent to deliver ("PWID"), possession of a controlled substance, aggravated assault, fleeing or attempting to elude, several counts of recklessly endangering another person ("REAP"), several counts of driving under the influence ("DUI"), and related summary offenses, totaling seventeen counts. *See generally* Information, 10/17/18. In January 2020, the Commonwealth amended the information, and Jenkins entered a negotiated guilty plea to five charges: PWID; possession of a controlled substance; DUI (first offense); REAP; and fleeing or attempting to elude. *See* Sentencing Sheet, 1/22/20. Plea counsel negotiated the sentence recommendation down from an initial offer of seven to fourteen years of imprisonment, Jenkins pled guilty, and,

pursuant to the agreement, he received an aggregate sentence of forty-five to ninety-six months of incarceration. *See id*.[2]

Jenkins took no direct appeal but later filed a timely *pro se* PCRA petition on February 17, 2021. In that *pro se* petition, Jenkins presented, *inter alia*, the following grounds for relief: a violation of the Commonwealth's obligation to turn over evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963); an unlawfully induced guilty plea arising from the alleged *Brady* violation; and the unavailability at the time of trial of exculpatory evidence. *See Pro Se* PCRA Pet., 2/17/21, at 2. The crux of these claims is that the Commonwealth failed to disclose prior to Jenkins's plea that one of the passengers in Jenkins's car, Edward Walsh ("Walsh"), was a confidential informant ("CI") for Officer Irey, which Jenkins asserted he later learned from the other passenger, James Bentley ("Bentley"). According to an affidavit by Bentley, which Jenkins attached to his petition, Bentley learned this fact from Walsh. *See id*. at Ex.1; *see also Pro Se* Clarified/Amended PCRA Pet., 5/20/21. The Commonwealth later conceded that it had learned for the first time during preparation of a response to Jenkins's PCRA petition that Walsh had in fact been working as a

---

[2] Jenkins had filed a suppression motion challenging the search of his vehicle, which he later withdrew in order to plead guilty. Both his plea counsel and the Commonwealth agreed that even if the suppression motion were decided in his favor, he could receive a four-to-eight-year prison sentence based on other charged offenses, and counsel stated that Jenkins was aware of this fact. *See* N.T., 1/22/20, at 14.

CI, *see* Commonwealth's Mot. to Dismiss, 1/17/23, at 2. However, the Commonwealth disputed that this was a *Brady* violation because Walsh's status as a CI did not exculpate Jenkins of the offenses for which he pleaded guilty. *See*, *e.g.*, N.T., 10/13/23, at 56.

The PCRA court appointed counsel for Jenkins, after which Jenkins moved for counsel's withdrawal because he privately obtained counsel; thereafter, Jenkins requested to proceed *pro se*, which the court granted, following a *Grazier*[3] hearing, and the court also appointed standby counsel. *See* Order, 6/14/23.

While the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss, it held a hearing following receipt of Jenkins's response. *See* Order, 8/23/23. At the hearing, Jenkins again argued that the Commonwealth's failure to disclose information that Walsh was a CI constituted a *Brady* violation, for which he should be able to withdraw his guilty plea, and after which a subsequent prosecution should be barred. *See* N.T., 10/13/23, at 37. Jenkins—relying on the affidavit by Bentley in which he stated that Walsh allegedly told him (Bentley) that Officer Irey planted drugs in Jenkins's vehicle— argued that Officer Irey planted the drugs in Jenkins's car, though he offered no evidence at the PCRA evidentiary hearing to substantiate this assertion, and Jenkins was unable to procure Walsh's or Bentley's

_____

[3] *See Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

attendance.[4] Jenkins's mother also testified that Jenkins accepted the plea deal because he wanted to "get less time than [what the Commonwealth] was [originally] offering [him]." N.T., 10/13/23, at 81.

At the conclusion of the hearing, the PCRA court took the matter under advisement, and later issued an order denying relief. ***See*** Order, 3/1/24. Jenkins timely appealed, and both he and the trial court complied with Pa.R.A.P. 1925.

Jenkins raises the following issue for our review:

> Did the PCRA [c]ourt err when it failed to analyze the ***Brady*** violation regarding . . . Walsh and [Officer] Irey in conjunction with the Commonwealth's actions to intentionally deny [Jenkins's] [d]ue [p]rocess rights and a fair [t]rial pursuant to [section] 9543(a)(2)(i) and grant relief? In the alternative, did the [c]ourt err by not granting relief pursuant to [section] 9543(a)(2)(vi)?

Jenkins's Br. at VI.

Our standard of review is as follows:

> Initially, we note that our standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

---

[4] Jenkins, however, presented testimony by plea counsel and his (Jenkins's) mother on the issue of whether plea counsel informed him prior to the plea that his license suspension could only begin following his release from prison. While Jenkins pursued this claim at the PCRA evidentiary hearing, he has abandoned this issue on appeal, as reflected in his statement of questions involved. ***See***, ***e.g.***, ***Commonwealth v. Thoeun Tha***, 64 A.3d 704, 713 (Pa. Super. 2013) (stating that failure to present or develop an argument in support of a claim on appeal causes it to be waived).

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019)

(internal citations and quotations omitted).

A petitioner is eligible for relief under the PCRA if he proves his conviction resulted from, *inter alia*, a constitutional violation which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place," 42 Pa.C.S.A. § 9453(a)(2)(i), or if the conviction resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." *Id*., § 9543(a)(2)(vi).

Both of Jenkins's asserted grounds for relief hinge on *Brady*, therefore, we set forth the applicable law below:

> In *Brady*, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, and that the duty may encompass impeachment evidence as well as directly exculpatory evidence. Furthermore, the prosecution's *Brady* obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution.
>
> *Commonwealth v. Lambert*, [] 884 A.2d 848, 853-54 ([Pa.] 2005) (internal citations and quotations omitted). The prosecution's duty under *Brady* is limited as "the Constitution is not violated every time the government fails or chooses not to

disclose evidence that might prove helpful to the defense." ***Kyles[v. Whitley***, 514 U.S. 419, 436-37 (1995)] . . .. "Thus, there are three necessary components that demonstrate a violation of the ***Brady*** strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued." ***Lambert***, 884 A.2d at 854 . . ..

***Commonwealth v. Conforti***, 303 A.3d 715, 725–26 (Pa. 2023).

Relevant to this case is ***Brady***'s prejudice requirement, which our Supreme Court has articulated as follows:

> The last requirement of a ***Brady*** claim is prejudice. Under ***Brady***, prejudice occurs when a defendant shows a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In other words, the undisclosed evidence must be material to guilt or punishment. . . .

***Id***. at 730 (internal citations and quotations omitted). The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense. ***See Commonwealth v. Cam Ly***, 980 A.2d 61, 76 (Pa. 2009). Instead, as noted above, materiality for ***Brady*** purposes requires a showing of a reasonable probability that the result of the proceedings could have been different. ***See Commonwealth v. Haskins***, 60 A.3d 538, 547 (Pa. Super. 2012).

Jenkins argues the Commonwealth's failure to disclose Walsh's status as a CI constituted a ***Brady*** violation because it was favorable to him as it would have allowed him to impeach Officer Irey; the prosecution suppressed

- 7 -

this information; and prejudice ensued because Officer Irey's testimony was "material to the finding of [Jenkins's] guilt." Jenkins's Br. at 19. Jenkins argues that it was only Officer Irey's testimony that supported his convictions, and the non-disclosure of Walsh as a CI would be not only impeachment evidence, but also useful for bolstering Jenkins's version of events, namely, that either Walsh or Officer Irey planted the drugs in Jenkins's vehicle. *See id*. Jenkins also argues he would have filed a suppression motion challenging the search warrant for the vehicle. *See id*. at 20-25. Jenkins additionally asserts his impeachment of Officer Irey would have established at trial that the drugs were not his, and that Officer Irey would have had no credibility before the jury. *See id*. at 25-26, 27-29.

The PCRA court considered Jenkins's arguments and rejected them. In relevant part, the court concluded that Jenkins failed to show how the non-disclosure of Walsh's status as a CI would likely compel a different outcome, given Jenkins's convictions stemmed from his "intervening criminal acts," and were not dependent on Walsh (specifically, Jenkins's commission of fleeing or eluding, REAP, DUI, and possession of a controlled substance, and PWID). *See* PCRA Ct. Op., 5/15/24, at 14-15.

Following our review, we conclude the PCRA court's conclusions are supported by the record and applicable law. We note that at the hearing, Jenkins conceded that he had a controlled substance on his person at the time of the incident and that he could "plead guilty to that without a problem," and

he additionally admitted his culpability for the car chase that resulted in his fleeing or eluding and REAP convictions. *See* N.T., 10/13/23, at 45. Indeed, in response to the PCRA court's question of which convictions he was challenging, Jenkins conceded that his challenge was limited to the drugs in the car. *See id*. at 63. Accordingly, we limit our discussion to that conviction.

To the extent that Jenkins argues the nondisclosure of Walsh as a CI affected Jenkins's ability to file a suppression motion challenging the search of his vehicle, we note, initially, that Jenkins has failed to show that the probable cause to search his vehicle hinged in any way on Walsh, rather than the apparent controlled substance, "large amount" of cash, and key fob to the vehicle found on Jenkins's person following the crash at the end of the car chase.[5] Further, Jenkins had a pending suppression motion at which he generally challenged the probable cause to search his vehicle, *see* Omnibus Pre-Trial Mot., 1/23/19, at ¶¶ 5-7, and he expressly gave up his right to litigate that motion in order to plead guilty following extensive plea

_____

[5] We note that the use of a CI does not negate probable cause; rather, the trial court must assess the informant's veracity, reliability, and basis of their knowledge. *See Commonwealth v. Bernard*, 218 A.3d 935, 940-41 (Pa. Super. 2019). Additionally, where there are alleged omissions in an affidavit of probable cause in support of a search warrant, the fact of an omission is not dispositive; rather, we consider (1) whether the officer withheld a highly relevant fact within his knowledge, where any reasonable person would have known that this was the kind of thing the judge would wish to know and (2) whether the affidavit would have provided probable cause if it had contained a disclosure of the omitted information. *See Commonwealth v. Gould*, 187 A.3d 927, 940 (Pa. Super. 2018).

negotiations with the Commonwealth. ***See*** N.T., 1/22/20, at 32 (Jenkins acknowledging he was giving up the right to have the trial court decide his suppression motion).

Additionally, and crucially, both the Commonwealth and Jenkins's plea counsel agreed that even if the trial court suppressed the drugs found in the car, Jenkins "***can still be found guilty of the other offenses and that puts [him] in the range of four years, which is what the Commonwealth [was] offering***." ***See id***. at 14 (emphasis added). Jenkins's attorney confirmed at the time that Jenkins was aware of the fact that, depending on how the court sentenced him, should he proceed to trial on the remaining offenses and be convicted, he could receive a four-to-eight-year prison sentence. ***See id***. At the PCRA hearing, Jenkins elicited testimony from his mother that, "The reason you pled guilty is because you wanted to get less time than the time that they was offering you, which was like about 14 years or more," to which Jenkins replied, "Right." ***See*** N.T., 10/13/23, at 81. ***Accord*** N.T., 1/22/20, at 5 (Commonwealth stating that the initial offer to Jenkins was seven to fourteen years of incarceration); ***id***. at 6 (Commonwealth agreeing to offer an aggregate sentence of four to ten years of imprisonment); ***id***. at 27 (describing how the Commonwealth and Jenkins's counsel negotiated the aggregate sentence down to, *inter alia*, forty-five to ninety-six months of imprisonment).

The foregoing shows that Jenkins opted to plead guilty to guarantee the negotiated forty-five-to-ninety-six-month sentence of incarceration rather than risk moving forward with a suppression hearing where he might not prevail, but even if he did, he could receive a similar sentence thereafter. Thus, Jenkins's **Brady** claim fails because he cannot establish prejudice, *i.e.*, materiality, namely, that the earlier disclosure of Walsh as a CI would have likely resulted in a different outcome at his plea hearing or, alternatively, at a trial.

To the extent that Jenkins argues, separately, that the non-disclosure of Walsh as a CI constituted grounds for relief as after-discovered evidence pursuant to section 9543(a)(2)(vi), we note that this claim likewise merits no relief.

In order to obtain relief based upon exculpatory, after-discovered evidence, a party must demonstrate that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not used solely to impeach credibility; and (4) it would likely compel a different verdict. **See Commonwealth v. Foreman**, 55 A.3d 532, 537 (Pa. Super. 2012).

Jenkins does not explain how the nondisclosure of Walsh as a CI is anything more than evidence for impeachment of Officer Irey—and, as stated above, Jenkins has also likewise failed to advance any **evidence** showing that

the prior disclosure of the mere fact that Walsh was a CI, or that Officer Irey had not previously mentioned it, would have likely compelled a different outcome either at the plea hearing or at a trial. Jenkins points to Bentley's affidavit in which he asserts that Walsh told him (Bentley) that Officer Irey planted the drugs for which Jenkins was convicted. However, the Commonwealth disputes these facts, and as noted above, Jenkins failed to put on any such evidence at the hearing on his petition. Accordingly, Jenkins has failed to show the existence of after-discovered evidence that would compel a different verdict had the case gone to trial. *Cf*. ***Commonwealth v. Heaster***, 171 A.3d 268, 273 n.6 (Pa. Super. 2017) (noting the applicability of after-discovered evidence claims to convictions resulting from guilty pleas); ***see Commonwealth v. Spotz***, 896 A.2d 1191, 1219-20 (Pa. 2006) (failure to present at a PCRA hearing evidence necessary for a claim is fatal to that claim). For these reasons, his argument fails.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/25/2025