J. S55019/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,    :    IN THE SUPERIOR COURT OF
   :    PENNSYLVANIA
   :
   :
   :
v.    :
   :
WILLIAM HARVEY    :
   :
Appellant    :    No. 121 EDA 2014

Appeal from the Judgment of Sentence April 24, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014937-2010
CP-51-CR-0014981-2010

BEFORE: LAZARUS, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:      **FILED OCTOBER 18, 2016**

Appellant, William Harvey, appeals from the Judgment of Sentence imposed on April 24, 2013, in the Court of Common Pleas of Philadelphia County. After careful review, we conclude that the evidence which the Commonwealth inadvertently failed to preserve and which was equally available to the defense cannot form the basis of a claim pursuant to ***Brady v. Maryland***, 373 U.S. 83 (1963). Therefore, we affirm.

The trial court summarized the facts underlying Appellant's convictions as follows:

> Mr. Darnell Thomas[] testified that he is the president of the
> Street Kings Motorcycle Club and that he had arranged to meet

---

[*] Former Justice specially assigned to the Superior Court.

with a woman named "Sky," later identified as Shakeema Scott, at her residence on September 20, 2010, for the purpose of finalizing the incorporation of her motorcycle club into his club as a social member. He testified that he rode to the meeting on his own motorcycle and was met there by three other members of his club who had come separately, arriving at between 5:00 and 6:00 p.m.

When he arrived, "Sky" was sitting on her front steps talking with a member of his club. As he approached "Sky," [Appellant], whom he did not know, approached the group, identified himself as the father of Sky's child and asked her, "You called these (---) on me?" In response, Mr. Thomas introduced himself, shook [Appellant's] hand and told him they were there "for club business." [Appellant] then asked, "Y'all got a problem?" He then walked away from the group with another man. A member of Mr. Thomas' club, Mr. Donnell Wright, repeatedly said, "Let's go." Keeping his eyes on [Appellant], Mr. Thomas began backing towards his motorcycle preparing to leave. Sensing danger, he felt safer getting into Mr. Wright's van. As he was reaching up to get into the van, Mr. Thomas was shot in the left wrist and then his hip whereupon Mr. Wright lifted him into the van.

Prior to being shot, Mr. Thomas observed [Appellant] approach a nearby car and the other man reach into it and hand [Appellant] a gun. Without a word, [Appellant] pointed the gun at Mr. Thomas and began shooting. [Appellant] was the only person shooting.

. . .

Mr. Wright [] testified that as Mr. Thomas was getting into the van, [Appellant] started shooting at them. He "heard Mr. Thomas like whimper, and I asked him, was he hit? And at the time I guess he was in shock. He said he don't know; because he got hit in his wrist. Then the second shot hit his hip, and then he collapsed. So when he collapsed I saw he was hit, and I had the van door open so I just jumped out the van while we're still being fired on, and I pulled him in the van, shut the door, and then I ran back to the driver's side and pulled off." When he pulled away from the scene, Mr. Wright saw Mr. Robinson, the third member of their club at the meeting, running up the street. As [Mr. Wright] approached Mr. Robinson to get him in the van, [Appellant's] car drove into oncoming traffic, pulled alongside

the van "trying to gun down Jeffrey Robinson." Attempting to shield Mr. Robinson, Mr. Wright was shot in both legs by [Appellant] through the van's driver's door. After he saw Mr. Robinson dive into a small alleyway for cover, Mr. Wright drove to the nearest hospital, several blocks away.

Trial Court Opinion, filed 6/30/14, at 4-6 (citations omitted).

The trial court summarized the procedural history as follows:

On October 29, 2010, [Appellant] was arrested and charged under two bills of information arising out of the same incident. At CP-51-CR-0014937-2010, [Appellant] was charged with Aggravated Assault on complainant Darnell Thomas, and at CP-51-CR-0014981-2010, he was charged with two counts of Aggravated Assault on complainants Donnell Wright and Jeffrey Robinson, and one count each of Conspiracy, Possession of a Firearm Prohibited, Carrying Firearms Without a License and Possession of an Instrument of a Crime.[]

On February 15, 2013, at the conclusion of his jury trial, [Appellant] was found guilty on all charges except for one count of aggravated assault. On CP-51-CR-001981-2010, the jury found [Appellant] not guilty of assaulting complainant Jeffrey Robinson. On April 14, 2013, [Appellant] was sentenced to consecutive periods of confinement in a state correctional facility of 7 to 15 years on the charge of aggravated assault at CP-51-CR-001937-2010, 7 to 15 years on the charge of aggravated assault, 5 to 10 years on the charge of conspiracy, and 3 to 10 years on the charge of possession of a firearm by a prohibited person at CP-51-CR-001981-2010, for a total period of confinement of 22 to 50 years. On the remaining charges of carrying firearms without a license and possession of an instrument of a crime the [trial c]ourt made a determination of guilt without further penalty.

On May 6, 2013, [Appellant] timely filed a Motion for Post-Sentence Relief seeking a judgment of acquittal or, in the alternative, a new trial pursuant to the Pennsylvania Rules of Criminal Procedure, Pa.R.Crim.P. 720(A)(1) and Pa.R.Crim.P. 720(B)(1)(a)(ii) and (iv). [Appellant's] Motion was denied by Operation of Law pursuant to Pa.R.Crim.P. 720(B)(3)(a) on September 3, 2013.

*Id.* at 1-2.

On September 3, 2013, Appellant timely filed the instant appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issue for our review:

Did the Commonwealth violate Appellant William Harvey's rights to Due Process of Law under **Brady vs. Maryland**[, 373 U.S. 83 (1963)] and Pa.R.Crim.P. Rule 573 when it suppressed the photograph that was used to identify the suspect?

Appellant's Brief at 3.[1]

As our Supreme Court has noted, "[t]he law governing alleged **Brady** violations is well-settled." **Commonwealth v. Lambert**, 884 A.2d 848, 853 (Pa. 2005). It is a violation of a defendant's right to due process for the Commonwealth to "withhold[] evidence that is favorable to the defense and material to the defendant's guilt or punishment." **Smith v. Cain**, 132 S. Ct. 627, 630 (2012) (citation omitted).

To prevail on a claim that the Commonwealth has committed a **Brady** violation, "an appellant must prove three elements: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either

---

[1] Appellant makes only a single passing reference to Pa.R.Crim.P. 573 in the argument portion of his Brief, without any discussion thereof. Appellant's Brief at 25. Therefore, Appellant waived any claims arising under Rule 573, because he failed to discuss or develop such claims. **See** Pa.R.A.P. 2119(a); **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) ("[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." (internal citation omitted)).

willfully or inadvertently; and (3) prejudice ensued." **Commonwealth v. Weiss**, 81 A.3d 767, 783 (Pa. 2013) (citations omitted).

> Pursuant to **Brady** and its progeny, the prosecutor has a duty to learn of all evidence that is favorable to the accused which is known by others acting on the government's behalf in the case, including the police. **Kyles v. Whitley**, 514 U.S. 419, 437 (1995). Pursuant to **Kyles**, the prosecutor's **Brady** obligation clearly extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution. **Commonwealth v. Burke**, 781 A.2d 1136, 1142 ([Pa.] 2001). Moreover, there is no **Brady** violation when the defense has equal access to the allegedly withheld evidence. **See Commonwealth v. Spotz**, 896 A.2d 1191, 1248 ([Pa.] 2006) ("It is well established that no Brady violation occurs where the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence[]" (internal citation omitted)).

**Id.** (internal quotation and parallel citations omitted).

In the instant case, Appellant alleged that the Commonwealth's failure to produce a Facebook photo implicated **Brady, supra**. The photo at issue was discovered by Messrs. Thomas and Wright on Sky's Facebook page shortly after the shooting. N.T., 2/12/13, at 90. At the time, police had still not determined Appellant's name, and Messrs. Thomas and Wright believed that one of the men in the photo was Appellant. **Id.** at 92. They showed the photo to Detective Joseph Murray in an attempt to help in identifying Appellant. **Id.** The photo was poor quality, however, and did not assist the police in determining Appellant's name. N.T., 2/14/13, at 71. Instead, police learned Appellant's name from Sky's brother, and Detective Murray later used an unrelated photo of Appellant to assemble a photo array for

Messrs. Thomas and Wright. *Id.* at 5-7, 41, 45-46, 88. Both victims positively identified Appellant as the shooter from that photo array. *Id.* at 46-47, 50-51.

Despite the fact that the photo was from Appellant's girlfriend's Facebook page, Appellant asked the Commonwealth to produce the photograph prior to trial.[2] The Commonwealth was unable to locate the photo. The prosecution made their entire case file available to Appellant, but the Facebook photo at issue was not in the Commonwealth's possession. N.T., 11/14/11, at 6-7. Detective Murray attempted to locate the photo, but he determined that the photo had not been retained by police. N.T., 2/14/13, at 42-43. Appellant asked the court to bar all identification testimony based on the missing photograph. N.T., 11/14/11, at 4-6. The court declined to do so, but later instructed the jury that they could, if they wished, infer that the Facebook photo would have been favorable to Appellant. N.T., 2/15/13, at 97-101.

Under the facts of this case, Appellant's reliance on *Brady* is misplaced. *Brady* and its progeny impose an affirmative duty on the

---

[2] Given that the photo was available on Appellant's girlfriend's Facebook page, Appellant could not prevail on a *Brady* claim even if he established that the Commonwealth also had possession of the photo. As our Supreme Court has held, "no *Brady* violation occurs where the parties had equal access to the information or if the defendant **knew or could have uncovered such evidence with reasonable diligence**." *Commonwealth v. Morris*, 822 A.2d 684, 696 (Pa. 2003), citing *Commonwealth v. Paddy*, 800 A.2d 294, 305 (Pa. 2002) (emphasis added).

prosecution to produce so-called "**Brady** material." **Lambert, supra** at 853-54. Here, there was nothing to produce. As such, this matter is not properly characterized as a **Brady** issue.[3]

We, therefore, conclude that the trial court did not err in finding Appellant was not entitled to relief pursuant to his **Brady** claim. Accordingly, we affirm.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/2016

---

[3] A claim that the Commonwealth failed to preserve evidence is subject to a separate and distinct analysis. **See Arizona v. Youngblood**, 488 U.S. 51, 56 (1988) (noting that, where evidence was not preserved, any due process violation "must be because of some constitutional duty over and above that imposed by cases such as **Brady**[.]"); **Commonwealth v. Coon**, 26 A.3d 1159 (Pa. Super. 2011) (analyzing a due process claim based on unpreserved evidence without reference to **Brady** and its progeny, and requiring that the appellant show bad faith on the part of the Commonwealth to prevail on such a claim).