J-S33039-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                             :            PENNSYLVANIA
                                             :
                          v.                       :
                                             :
                                           :
PRESTON JOSEPH PIAZZA             :
                                           :
              Appellant             :     No. 1055 EDA 2021

Appeal from the PCRA Order Entered May 3, 2021
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0006421-2010

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:           **FILED JANUARY 19, 2022**

Preston Joseph Piazza appeals from the order dismissing as untimely his Post Conviction Relief Act ("PCRA") petition. ***See*** 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The subject PCRA petition relates to Piazza's convictions in 2011 for Intimidation of a Victim, Criminal Solicitation of Aggravated Assault, and Retaliation against a Witness or Victim.[1] Previously, in November 2004, a jury convicted Piazza of Rape and related offenses. The victim of those crimes was C.S. One of the witnesses against Piazza in 2004 was Anthony Lehman. The court sentenced Piazza to 15 to 30 years' incarceration and ordered him not to have any contact with C.S. Later, while in prison on that conviction, Piazza

_____

[1] 18 Pa.C.S.A. §§ 4952(a)(2), 902(a), and 4953(a), respectively.

pleaded guilty to stalking C.S. and the court sentenced him to an additional five years' probation.

In 2010, the Commonwealth charged Piazza in connection with the case at issue in this appeal. The victim intimidation charge was as to C.S., and the solicitation of aggravated assault was as to Lehman.[2] At trial, the prosecution presented the testimony of Mary Quinn that Piazza wanted her to find C.S. and "get [C.S.] to say that she lied about being raped." N.T., 4/7/11, at 36. Quinn said that Piazza wanted her to "try to meet [C.S.], be friends with her, get her to recant, get her to say that she was coerced by the police." *Id.* at 37. Quinn testified she was to attend a beef and beer that C.S. also was attending and while there, "give [C.S.] a fistful of Xanax and then convince her to go for a boat ride." *Id.* at 87. While on the boat, Quinn "would convince C.S. to say that [Piazza] never raped her and to recant the statements from the original trial." *Id.* At the same beef and beer, Piazza's friend Sean Barley, known as "Shabba," with whom Quinn had communicated, was going to beat up Lehman. *Id.* at 88-90. Quinn took some but not all of the steps Piazza requested.

On cross-examination, defense counsel asked Quinn if she had been charged in connection with her actions, and she responded, "Not as of yet." *Id.* 127. She further answered that she had not been told that if she did not testify in a certain way she would be charged and that she no one threatened

---

[2] 18 Pa.C.S.A. §§ 4952(a)(2), 902(a), and 4953(a), respectively.

her to testify. *Id.* She testified that the Commonwealth had not told her that she potentially could be charged and that she had not asked whether she was "free and clear." *Id.* at 128.

At the trial, the jury also heard testimony from police officers and from Barley. Barley testified that he understood that Piazza wanted him to beat up Lehman. *Id.* at 149-53. The jury received additional evidence of the plot, including recordings of phone calls between Quinn and Piazza.

During closing arguments, the assistant district attorney stated:

> Now, let's talk about the tough call we had to make in not charging Mary Quinn and Sean Barley. And maybe that frustrates you, and that is understandable. In this job sometimes you have to make tough calls and not everybody is going to like them. But to get to the main focus and the real threat -- and you have to get to the main threat -- that was Preston Piazza. Sometimes you have to forgo the smaller players in a scheme to get the main threat. And a colleague shared this saying with me and it is used in this line of business often, crimes conceived in hell do not have angels for witnesses.

N.T., 4/8/11, at 97-98

The jury found Piazza guilty and the court sentenced Piazza to 23½ to 47 years' incarceration. This Court affirmed the conviction in July 2013, and Piazza did not file a petition for allowance of appeal.

Piazza filed a *pro se* PCRA petition in August 2018. The court appointed counsel. Counsel filed a motion for an extension of time and a request to allow Piazza to proceed *pro se*. The PCRA court held a ***Grazier***[3] hearing, after which

---

[3] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1988).

it found Piazza knowingly, voluntarily, and intelligently waived his right to counsel and granted his request to proceed *pro se*. The court granted Piazza additional time to review discovery and file an amended petition. Piazza filed a motion in which he stated he was not going to amend the petition.

The PCRA court issued an order finding the petition was not filed within one year of the date of judgment and Piazza failed to plead an exception to the one-year filing requirement. It granted Piazza 60 days to file an amended petition identifying an exception to the one-year filing requirement.

Piazza amended his petition to allege that Quinn had received a deal from the Commonwealth in exchange for her testimony and the Commonwealth had not informed him of the deal. He maintained he learned of this alleged deal in July 2018. ***See*** Petition for Leave of Court to File this Supplement Filing in Support of the Pending PCRA Petition, filed Sept. 12, 2019.

At a PCRA hearing, Piazza testified that in July 2018 he received a letter from his brother[4] that informed him that Mary Quinn told him that "she received leniency to testify against Piazza" and was told that "[s]he would not be prosecuted for anything." N.T., 5/22/2020, at 25, 27. The court adjourned the hearing to provide Piazza 10 days to find the letter. When the court reconvened, Piazza advised that he no longer possessed the letter. Piazza claimed that prison personnel removed letters received due to concerns they

_____

[4] His brother passed away before the hearing.

were tainted with a drug. N.T., 6/4/2020, at 13-15.[5] The court heard argument on the time bar exception, including whether the PCRA court should appoint counsel to subpoena Quinn, as Piazza was prohibited from contacting her. The PCRA court informed Piazza that if it "agreed that [Quinn's] testimony [was] necessary for [it] to decide the jurisdiction issue, then [it would] appoint an attorney to assist" in locating and interviewing her. *Id.* at 48. However, if it concluded her testimony as not necessary to determine jurisdiction, it would enter an order denying the petition. *Id.* at 48-49.

After the parties filed additional briefs, the court issued notice of its intent to dismiss the petition as untimely and, in May 2021, it dismissed the petition. Piazza timely appealed. The court did not order Piazza to file a statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).

Piazza raises the following issues:

> 1. Did the [PCRA] court abuse its discretion when it dismissed the new evidence PCRA petition as being untimely filed and not meeting the exception set forth to the time-bar in 42 Pa.C.S.A. § 9545(b)(1)(ii)[] and (b)(2)[?]
>
> 2. Did the *Brady v. Maryland*[6] violation require a new trial?

---

[5] After discovering that letters received by prisoners contained traces of a drug, the prison started sending mail to a facility in Florida that would reproduce the mail and return it. Piazza testified that his brother's letter came before this procedure was initiated, but after concerns about tainted mail. N.T., 6/4/20, at 13-15.

[6] *Brady v. Maryland*, 373 U.S. 83~~, 83 S.Ct. 1194, 10 L.Ed.2d 215~~ (1963).

3. Does **Commonwealth v. Strong**[7] apply to this case?

Piazza's Br. at 4 (emphasis and unnecessary capitalization omitted).

"When reviewing the denial of a PCRA petition, we must determine whether the PCRA court's order is supported by the record and free of legal error." **Commonwealth v. Anderson**, 234 A.3d 735, 737 (Pa.Super. 2020). (quoting **Commonwealth v. Smith**, 181 A.3d 1168, 1174 (Pa.Super. 2018)).

A PCRA petitioner must file a PCRA petition within one year of the date the judgment of sentence becomes final unless at least one of the statutory exceptions to the one-year rule applies. **See** 42 Pa.C.S.A. § 9545(b). A judgment becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

In this case, Piazza's judgment of sentence became final in August 2013, after the expiration of the time for Piazza to file a petition for allowance of appeal with the Pennsylvania Supreme Court. **See** Pa.R.A.P. 1113(a) (providing for filing of a petition for allowance of appeal "within 30 days after the entry of the order of the Superior Court . . . sought to be reviewed."). Therefore, the one-year deadline expired in August 2014, and the instant petition, filed in 2018, is untimely.

A court lacks jurisdiction to review any claim raised in an untimely PCRA petition unless the petitioner pleads and proves an exception to the time-bar.

---

[7] **Commonwealth v. Strong**, 761 A.2d 1167 (Pa. 2000).

*Commonwealth v. Jackson*, 30 A.3d 516, 521-22 (Pa.Super. 2011). A petitioner bears the burden of pleading and proving the applicability of one of the time-bar exceptions: (i) unconstitutional interference by government officials; (ii) new facts that the petitioner could not have previously ascertained with due diligence; or (iii) a newly recognized constitutional right that has been held to apply retroactively. *See* 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).

Piazza argues that he established the new fact exception to the PCRA time-bar. He cites his claim that Quinn told his brother that she testified against Piazza "in exchange for a promise she would not be arrested or charged with any offense related to the case." Piazza's Br. at 10. Piazza claims Quinn told his brother this information in July 2018 and Piazza learned of it from a letter received from his brother. He states Quinn was the Commonwealth's "star" witness, and it suppressed the leniency promise and did not reveal it to Piazza. *Id.* at 7. He contends the court should have issued a subpoena to have Quinn testify as to the alleged promise.

To qualify for the new fact exception, "a petitioner need only establish that the facts upon which the claim is based were unknown to him and could not have been ascertained by the exercise of due diligence." *Commonwealth v. Burton*, 158 A.3d 618, 629 (Pa. 2017).

Here, the PCRA court noted that at trial, Quinn testified that she had not been charged with a crime and had not been told that she would be charged if she did not testify in a certain way. Trial Court Op., at 8-9 (citing N.T.,

4/7/11, at 126-27). She testified that the Commonwealth did not tell her she was potentially facing charges related to the case and she had not asked whether she was "free and clear." **Id.** (citing N.T., 4/7/11, at 126-27). It further noted the Commonwealth's closing argument, including its acknowledgement that Quinn had not been charged in the case. **Id.** (citing N.T., 4/8/11, at 97-98). The PCRA court concluded that because Piazza "was aware at the time of trial that Ms. Quinn had not been charged and that the Commonwealth had made the decision not to charge her, he cannot establish that the fact upon which his **Brady** claim is predicated, i.e., the decision not to charge Ms. Quinn, was 'unknown to [him] and could not have been ascertained by the exercise of due diligence.'" **Id.** at 9. The court therefore found Piazza failed to prove a time-bar exception and it lacked jurisdiction to review his claim.

The record supports the trial court's findings of fact, and it did not err as a matter of law. Here, Piazza knew at least by the time of trial that Quinn had not been charged in connection with the crimes and that the Commonwealth did not plan to charge her. To the extent Piazza claims the new fact is that the decision not to charge Quinn was in exchange for Quinn's testimony—which is contrary to Quinn's trial testimony—Piazza did not prove that Quinn testified in exchange for leniency. He testified as to the information Quinn allegedly told his brother but was unable to produce the letter. Further, even if the court appointed counsel to subpoena Quinn, and Quinn testified as Piazza claims she would, that is, that the Commonwealth told her it would not

charge her if she testified against Piazza, he would not prevail. Although this may qualify for an exception to the time bar, in that it was a new fact that he could not have discovered with reasonable diligence, the underlying after-discovered evidence claim would fail.[8] *See Commonwealth v. Lambert*, 884 A.2d 848, 852 (Pa. 2005). Quinn testifying that the Commonwealth told her she would not be charged in exchange for her testimony would not have altered the outcome, where the jury knew she was not charged and knew the Commonwealth was not going to charge her and the other evidence admitted at trial established Piazza's guilt. Here, in addition to Quinn's testimony, the jury heard substantial evidence of his guilt, including, among other things, testimony from the person Piazza solicited to assault Lehman, testimony from police officers, and recordings of phone calls between Quinn and Piazza. *See Commonwealth v. Bomar*, 104 A.3d 1179, 1192-93 (Pa. 2014) (concluding petitioner failed to prove prejudice from *Brady* violation where witness was extensively cross-examined, a cautionary instruction was provided, and substantial other physical and circumstantial evidence established his guilt).

_____

[8] To prove a *Brady* violation, the petition must establish "the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued." *Commonwealth v. Lambert*, 884 A.2d 848, 854 (Pa. 2005) (quoting *Commonwealth v. Burke*, 781 A.2d 1136, 1141 (Pa. 2001)). "To show prejudice, [the petitioner] must demonstrate a 'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Commonwealth v. Simpson*, 66 A.3d 253, 264 (Pa. 2013) (quoting *Commonwealth v. Clark*, 961 A.2d 80, 89 (Pa. 2008)).

Order affirmed.

Judge Bowes joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/19/2022