J-S08017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH RHONE | : | |
| | : | |
| Appellant | : | No. 2735 EDA 2023 |

Appeal from the PCRA Order Entered September 20, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-1127472-1975

BEFORE:  DUBOW, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MAY 21, 2025**

Joseph Rhone appeals from the order denying his serial petition filed

pursuant to the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A §§ 9541-46.

We affirm.

Previously, this Court summarized the pertinent facts and procedural

history as follows:

> On November 5, 1975, Herschel Williams, also known as the
> Jolly Green Giant, was shot to death as he entered his car with his
> two young children in front of their home.  Very shortly after the
> shooting, [Rhone] and two other men[1] were arrested for
> Williams' murder.  After a suppression hearing in which the court

_____

[1] Rhone's co-conspirators, Lonnie Dawson and William Hoskins originally were
tried jointly in 1976 and both were convicted of murder but both were awarded
a new trial.  Upon retrial, both men were again convicted of murder, and we
affirmed their judgment of sentence.  ***See Commonwealth v. Dawson***, No.
03335 Philadelphia 1984 (Pa. Super. 1986); ***Commonwealth v. Hoskins***,
No. 1439 Philadelphia 1986 (Pa. Super. 1988).

ruled that some of [Rhone's] statements to police would be admissible at trial, [Rhone] failed to appear for trial. After nearly thirteen years of attempting to locate [Rhone], police discovered him in Philadelphia and he was brought to trial in 1991.

Several civilian and police witnesses testified for the Commonwealth. The civilian witnesses established that on the day of the murder, three men in a green [C]adillac were present on the street where Williams lived. Two of the men wore brown hats; one of the hats was identified as a brown jeff cap. The two men who wore hats left the car and were seen approaching Williams from opposite sides of the street, whereupon they shot him repeatedly. None of the witnesses were able positively to identify [Rhone] as one of the shooters. Within minutes of the shooting, a call went out over police radio describing the vehicle involved in the shooting. Police stopped a car matching the description and arrested its occupants, including [Rhone]. At the time of his arrest, [Rhone] was wearing a brown jeff cap. In addition to testimony regarding the events on the day of the shooting, the Commonwealth offered police testimony that [Rhone] had been seen the day before, in the same green [C]adillac, driving behind the victim's car.

At the time of his arrest, [Rhone] acknowledged in a statement to police that he was present at the scene of the shooting, but claimed to have been in the car the entire time. He stated that he heard the gunshots but did not witness Williams' murder. When apprehended thirteen years later in his daughter's home, [Rhone] reached for a loaded gun in response to the forced entry of police into the home. [Rhone] did not testify at trial.

*Commonwealth v. Rhone*, 619 A.2d 1080, 1081-82 (Pa. Super. 1993).

A jury convicted Rhone of first-degree murder, conspiracy, and related charges. Thereafter, the trial court sentenced him to an aggregate term of life in prison without parole plus 7½ to 15 years of imprisonment. On January 27, 1993, we affirmed his judgment of sentence. *Id.* On June 7, 1993, our Supreme Court denied *allocatur*. *Commonwealth v. Rhone*, 627 A.2d 731 (Pa. 1993).

On June 19, 1995, Rhone filed his first *pro se* PCRA petition. The PCRA court appointed counsel who filed an amended petition. The PCRA court dismissed the petition, and this Court affirmed the order denying post-conviction relief. **Commonwealth v. Rhone**, 704 A.2d 695 (Pa. Super. 1997). Thereafter, Rhone filed unsuccessful serial PCRA petitions in 1998, 2005, 2007, and 2016.

On June 6, 2020, Rhone filed the PCRA petition at issue, his sixth. Thereafter, Rhone's counsel[2] asked to review the Philadelphia homicide detective's file ("H-file) in Rhone's case. After doing so, on December 22, 2021, PCRA counsel filed an amended petition in which counsel "incorporated by reference" Rhone's claims in his *pro se* petition, as well as adding two new claims based on counsel's review of the homicide file.

Thereafter, the Commonwealth filed a motion to dismiss on November 8, 2022, and Rhone filed a response on January 4, 2023. The PCRA court held hearings in March, July, and September 2023, at which no testimony was presented, but the parties presented arguments in support of their positions. By order entered September 20, 2023, the PCRA court denied Rhone's 2020 petition. On November 19, 2023, present counsel entered her appearance and filed a notice of appeal. Both Rhone and the PCRA court have complied with Appellate Rule 1925.

_____

[2] It is unclear from the record whether PCRA counsel was appointed or privately retained.

Rhone presents his issues on appeal as follows:

Whether [Rhone] is entitled to a new trial under the [PCRA] due to multiple violations of his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), specifically:

1. Whether the Commonwealth violated *Brady* when it failed to disclose a letter which identified another individual as the shooter.

2. Whether the Commonwealth violated *Brady* when it failed to disclose evidence relevant to the voluntariness of [Rhone's] statements—namely that Detectives [Michael] Chitwood and [John] Strohm had participated in [Rhone's] interrogation and had been investigated for assaulting [a co-defendant, William Hoskins,] during [Hoskins'] interrogation.

3. Whether the Commonwealth violated *Brady* when it failed to disclose a history of misconduct on the part of Detective [Lawrence] Gerrard and that Detective Gerrard had taken an active role in the investigation of [Rhone].

4. If the [Superior] Court determines that the *Brady* violations listed herein were not individually prejudicial, whether they cumulatively resulted in a trial process so flawed that a new trial is warranted.

Rhone's Brief at 2.

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

We first consider whether Rhone's sixth PCRA petition was untimely filed. The timeliness of a post-conviction petition is jurisdictional.

- 4 -

*Commonwealth v. Hernandez*, 79 A.3d 649, 651 (Pa. Super. 2013). Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment becomes final, unless the petitioner alleges and proves that an exception to the time for filing the petition is met. The three narrow statutory exceptions to the one-year time bar are as follows: "(1) interference by government officials in the presentation of the claim; (2) newly discovered facts; and (3) an after-recognized constitutional right." *Commonwealth v. Brandon*, 51 A.3d 231-233-34 (Pa. Super. 2012) (citing 42 Pa.C.S.A. § 9545(b)(1)(i-iii)). A PCRA petition invoking one of these statutory exceptions must be filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2).

Here, Rhone's judgment of sentence became final on September 6, 1993, ninety days after our Supreme Court denied his *allocatur* petition, and the time for filing a writ of *certiorari* to the United States Supreme Court expired. *See* 42 Pa.C.S.A. § 9545(b)(3); U.S.Sup.Ct.R. 13.[3] Therefore, Rhone had until September 6, 1994, to file a timely petition. Because Rhone filed his sixth petition in 2020, it is patently untimely, unless he has satisfied

---

[3] Because the ninetieth day fell on a Sunday, Rhone had until the next day to file his writ for *certiorari*. *See* 42 Pa.C.S.A. § 1908.

his burden of pleading and proving that one of the enumerated exceptions applies. *See Hernandez*, *supra*.

We first review the exceptions raised by Rhone. In his *pro se* PCRA petition, Rhone claimed that he could establish the PCRA court's jurisdiction pursuant to the newly discovered evidence exception and governmental interference exception to the PCRA's time bar. According to Rhone, he "recently discovered that [Detectives Chitwood and Strohm's] wrongful actions during [Rhone's] interrogation were investigated by authorities [and the allegations were] sustained, resulting in their transfer out of homicide." *Pro Se* PCRA Petition, 6/16/20, at 2 (unnumbered). Rhone further asserted that the Commonwealth violated **Brady** by failing to disclose that these detectives were disciplined.

In the amended petition, PCRA counsel averred that, after reviewing the H-file, he "discovered even more exculpatory information and evidence which was concealed by the Commonwealth at the time of [Rhone's] trial and over the ensuing years which resulted in [Rhone's] conviction in 1991." Amended PCRA Petition, 12/22/21 at 3 (unnumbered). In a supporting brief, PCRA counsel stated that his recent discoveries, including a 1975 letter and the misconduct of Detective Gerrard met both newly-discovered fact and government interference exceptions to the PCRA's time bar.

Here, the PCRA court found that Rhone failed to establish the newly-discovered exception to any of his claims. Our review of the record supports

the PCRA court's determination as to this exception, and Rhone does not challenge the PCRA court's conclusion on appeal.

Regarding the government interference exception, although a **Brady** violation might fall within that exception to the PCRA's time bar, the PCRA statute nevertheless requires a petitioner to plead and prove:  (1) the failure to previously raise the claim was the result of interference by government officials, and (2) the information on which he relies could not have been obtained earlier with the exercise of due diligence.  **Commonwealth v. Vinson**, 249 A.3d 119, 1205 (Pa. Super. 2021).  Here, the PCRA court found that Rhone's **Brady** claims were "arguably timely, as [Rhone] states that such [claims] were only discovered following his counsel's review of the files for this case after counsel had requested the opportunity to do so."  PCRA Court Opinion, 4/24/24, at 9 (unnumbered).  We disagree.

"In the PCRA context, statutory jurisdiction cannot be conferred by silence, agreement, or neglect."  **Commonwealth v. Mickeals**, 2025 PA Super 89, at 9 (Pa. Super. 2025) (citations omitted).  Our review of the record reveals Rhone failed to establish due diligence; he fails to explain why he could not have discovered earlier that Detectives Chitwood and Strohm were investigated for assaulting Hoskins, or why his various counsel over the ensuing almost thirty years did not examine the H-file in his case prior to PCRA

counsel's review of it in 2020.[4] Because Rhone did not prove due diligence, he does not meet the government interference to the PCRA's time bar. Therefore, we lack jurisdiction. *See Commonwealth v. Wharton*, 263 A.3d 567, 570 (Pa. 2021) (explaining that, "[i]f a petition is untimely, and none of the timeliness exceptions are met, courts do not have jurisdiction to address the substance of the underlying claims." (citation omitted).

Nonetheless, the PCRA court found that Rhone's *Brady* claims failed on their merits "because they [were] insufficiently developed to entitle [Rhone] to PCRA relief." PCRA Court Opinion, 4/24/24, at 3 (unnumbered). Thus, even if Rhone's *Brady* claims rendered his sixth PCRA timely, as explained below, we would agree with the PCRA court's conclusion that the Commonwealth's *Brady* violations, considered individually or cumulatively, would not entitle Rhone to a new trial.

We first review the law regarding the Commonwealth's duty to disclose certain evidence to a criminal defendant. Our Supreme Court has explained:

> Due process is offended when the prosecution withholds evidence favorable to the accused where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory or because it is

---

[4] In its brief, although the Commonwealth argues a lack of due diligence as to one *Brady* claim, *see infra*, the Commonwealth primarily concedes timeliness and argues only the merits of Rhone's substantive claims of after-discovered evidence.

- 8 -

impeaching, that evidence must have been suppressed by the [Commonwealth] either willfully or inadvertently, and prejudice must have ensued.

Pursuant to **Brady** and its progeny, the prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. However, there is no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case. The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.

Instead, favorable evidence is material, and constitutional error results, from its suppression by the government, is there is a reasonable probability that, that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome. In evaluating whether a reasonable probability of a different outcome has been demonstrated, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A defendant thus need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict. Rather, a defendant need only show that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

**Commonwealth v. Natividad**, 200 A.3d 11, 25-26 (Pa. 2019) (internal quotation marks and citations omitted).

In his first claim that the Commonwealth's **Brady** violation warrants a new trial, Rhone argues that the Commonwealth failed to disclose a letter, dated ten days after the murder, "identifying another individual as the shooter of the decedent." Rhone's Brief at 9. According to Rhone, "[t]he failure to

disclose this letter constituted a violation of [his] due process rights under **Brady** and a new trial should be granted on this basis." **Id.** at 11. We don't agree.

The entire letter, dated November 15, 1975 and written in cursive, reads as follows:

> To Whom It May Concern,
>
> I am carrying a heavy load on me. Every time I read the newspaper I see some one [sic] has been shot or killed by other means. The murder of Jolly Green Giant was the last straw. I feel that I have information on that situation. I am writing this agency because I know that you are looking for a person that was behind Giant['s] death. The man's name is Donald Taylor or Theodore Jackson and if you go to No. 15 Temple in Atlanta it would be to your advantage. I am afraid now for the life of my husband who is also a Muslim. Please do all you can in this matter as I am a nervous wreck.
>
> Thank you
>
> [Unsigned]
>
> -188-

Letter, 11/15/1975, at 1.

Here, the PCRA court first concluded that Rhone's claimed violation does not warrant relief because Rhone did "not argue as to the admissibility of the unsigned letter[.]" PCRA Court's Opinion, 4/24/24, at 10 (unnumbered).

Rhone challenges the trial court's conclusion, asserting that even if the unsigned letter itself was not admissible at a new trial, "admissibility at trial is not a prerequisite to a determination of materiality under **Brady**." Rhone's Brief at 14 (citing **Commonwealth v. Willis**, 46 A.3d 648, 670 (Pa. 2012)).

- 10 -

According to Rhone, "[c]ompetent counsel could have used this letter to conduct their own investigation into trying to identify the sender of the letter . . . or to investigate" the two men named in the letter. Rhone's Brief at 14. Rhone further argues that competent defense counsel could have "followed up on" the location provided in the letter and investigated "Muslim mosques or temples in Atlanta or Philadelphia which had the designation of "number 15." *Id.* at 15. Additionally, Rhone argues that competent defense counsel could have cross-examined the police detectives "the investigatory steps, or lack thereof, that they had taken to follow-up on the information contained in the letter." *Id.* Finally, Rhone asserts that, "[g]iven the lack of any eyewitness or direct evidence tying [Rhone] to the offense, there is a 'reasonable likelihood' that the suppression of this evidence 'affected the judgment of the jury.'" *Id.* (citation omitted).

We find Rhone's claims to be unavailing. Although the PCRA court initially stated that the unsigned letter would be inadmissible, the court further found that Rhone had not established prejudice. As part of the proof necessary to warrant a new trial based upon *Brady* violation, the evidence suppressed by the prosecution must be "material, meaning that prejudice must have ensued." *Natividad*, 200 A.3d at 26. Evidence is "material" only where "there exists a 'reasonable probability' that had the evidence been disclosed[,] the result at trial would have been different." *Id.* "The mere possibility that an item of undisclosed information might have helped the

- 11 -

defense or might have affected the outcome of the trial does not establish materiality in the constitutional sense." ***Id.***

Rhone's speculation as to what competent defense counsel could have done with the unsigned letter's contents is insufficient to meet the prejudice prong of the ***Brady*** test. ***See Willis***, 46 A.3d at 670 (holding "mere speculation by a defendant will not be sufficient to meet this burden"). Rhone has not proffered any information as to who the two men were, how their identity would prove he was not involved in the killing, or what reasons the jury might have to reach a different result had the letter been disclosed. "[I]t is not enough, for purposes of establishing materiality under ***Brady***, to simply allege that the withheld evidence may have opened the door to an otherwise unavailable defense theory, or to challenge the completeness of the police investigation." ***Commonwealth v. Natividad***, 200 A.3d 11, 37 (Pa. 2019) (citation and footnote omitted). Once again, Rhone only speculates that a cross-examination of the police detectives based on the unsigned letter would have benefitted him.

Our Supreme Court has further held that in the context of evidence identifying an alternative suspect, the Commonwealth is not required to disclose "every fruitless lead followed by investigators of a crime." ***Commonwealth v. Crews***, 640 A.2d 395, 406 (Pa. 1994). Initially, we note that, contrary to Rhone's contention, the unsigned letter does not identify either of the named men as the actual shooter. Rather the letter writer stated that either of these men was "behind" the murder, which could suggest that

a larger organization may have ordered the killing. Indeed, the Commonwealth's theory of the case was that Williams was the target of a gang hit by Rhone and his two accomplices is not in any way inconsistent with the contents of the unsigned letter.

Finally, while there may have been no eyewitnesses or direct evidence tying Rhone to the murder, the circumstantial evidence presented by the Commonwealth was substantial. As explained by the PCRA court, the trial court summarized this evidence as follows:

> In the case at bar, the following evidence was adduced at trial. On November 4, 1975, Sergeant Minner recognized [Rhone] as one of the three people sitting in a green Cadillac. This same green Cadillac was identified as being at the scene of the crime by [three Commonwealth witnesses]. [Four Commonwealth witnesses] testified that a man in a brown jeff cap was at the scene of the crime[.] Furthermore, Officer Kent stated that when he stopped the green Cadillac on the expressway, the man in the back seat had a brown jeff cap on and identified him as [Rhone].

PCRA Court Opinion, 4/24/24, at 1-2 (unnumbered) (citing Trial Court Opinion, 1/31/92) (record citations omitted). When this evidence is considered, along with Rhone's statement to police that he was present at the shooting, Rhone's characterization of the Commonwealth's evidence against him fails.

In sum, because Rhone's argument regarding his first ***Brady*** claim asked the PCRA court to award him a new trial based on speculation rather than "reasonable probability," he would not be entitled to relief in the form of a new trial.

- 13 -

As his second **Brady** claim, Rhone asserts that the Commonwealth had failed to disclose information that "would discredit the reliability of [his] self-inculpatory statement." Rhone's Brief at 9. It is clear from the record that pretrial Rhone sought to suppress his statements to police and testified at the suppression hearing that his statement was the result of coercion after being assaulted by police and the denial of his right to counsel.[5] Rhone asserts that he did not discover that Detectives Chitwood and Strohm had been investigated by the district attorney's office for assaulting his co-defendant (Hoskins) and disciplined until the fall of 2019, when he was sent information from his co-defendants' court files. According to Rhone, this recently discovered evidence would have corroborated his suppression testimony.[6]

Here, the PCRA court found that Rhone failed to specify how this newly gained information would "support the claim that his time in police custody was improper." PCRA Court Opinion, 4/24/24, at 11 (unnumbered). The PCRA court further opined that in making this **Brady** claim, Rhone "merely attempts to relitigate the same allegation made as far back as his Motion to Suppress filed in 1990." **Id.**

_____

[5] Although a suppression hearing transcript does not appear in the certified record, the parties do not dispute the nature of Rhone's testimony or the trial court's conclusion that Rhone was not credible.

[6] Rhone further asserts that the newly-discovered time sheets would corroborate the fact that his attorney was not permitted to see him.

For its part, the Commonwealth asserts that Rhone's recent discovery of a newspaper article originally published on April 26, 1977 does not, in and of itself, constitute a "new fact" because the article is hearsay. Commonwealth's Brief at 14 (citing **Commonwealth v. Castro**, 93 A.3d 818, 827 (Pa. 2014)). Moreover, it is clear from the record that, even before trial, Rhone knew that Hoskins was allegedly beaten by police. **See** Commonwealth's Motion in Limine, 5/2/91, at 2.

Nonetheless, to the extent that Rhone claims the Commonwealth violated **Brady** by failing to disclose the investigation and purported discipline of the detectives, Rhone did not provide any evidence to support the existence of these facts other than the newspaper article.[7] Thus, because Rhone has failed to establish that that his after-discovered evidence is "producible and admissible," this **Brady** violation would not entitle him to a new trial.[8]

In his third claim, Rhone asserts that the Commonwealth violated **Brady** when it failed to disclose a history of misconduct on the part of Detective

_____

[7] In his brief, Rhone claims that our Supreme Court has already found that evidence that Detective Chitwood was being investigated "constituted relevant impeachment evidence." Rhone's Brief at 19, 20 (citing **Commonwealth v. Dawson**, 405 A.2d 1230 (Pa. 1979)). **Dawson**, however, did not involve a **Brady** violation; rather Dawson was granted a new trial because he was prevented from cross-examining Detective Chitwood on his motive to testify given the detective's investigation.

[8] In fact, in his amended petition, Rhone conceded that he was unaware if any disciplinary action was taken. Amended PCRA Petition, 12/22/21 at 2 n.1.

Lawrence Gerrard and that Detective Gerrard "had taken an active role" in the investigation of him. Rhone's Brief at 23 (emphasis omitted).

Detective Gerrard testified at trial that he had seen Rhone, his two co-defendants, and Williams together on several occasions prior to Williams' death.[9] According to Rhone, the "Commonwealth relied on this testimony in its closing argument to argue that there was a drug dealing relationship between the defendants and [Williams], thus providing a motive for the shooting. Rhone's Brief at 23 (citing N.T., 5/8/91, at 95).

Rhone asserted that in 2021 he discovered through a newspaper article that Detective Gerrard had a history of misconduct—"a history of arranging sexual [liaisons] for jailhouse informants in exchange for cooperation in open homicide cases." *Id.* at 24. After reviewing the H-file for his case, PCRA counsel discovered a statement from Gerald Everett, a purported jailhouse informant, that was taken by Detective Gerrard. According to Rhone, this discovery "demonstrate[d] that Detective Gerrard had a far greater role in this investigation than previously disclosed." *Id.* Rhone therefore contended that the Commonwealth's failure to disclose Detective Gerrard's "pattern of misconduct as well as the extent of his role in the investigation" constituted a *Brady* violation such that a new trial is warranted.

_____

[9] Although the 1991 trial transcript does not appear in the certified record, the parties do not dispute this fact.

Here, although the PCRA court found that the Commonwealth failed to disclose information about Detective Gerrard and the use of a jailhouse informant, the court concluded that, even if the disclosure had been made, a different verdict would not have resulted. The PCRA noted "Everett did not testify at [Rhone's] trial and [Rhone] provided no information from Everett indicating that he was coerced by Detective Gerrard." PCRA Court Opinion, 4/24/24, at 10 (unnumbered). Our review of the record supports the PCRA court's conclusion.

Rhone asserts that the PCRA court's "materiality analysis was incorrect." Rhone's Brief at 26. He claims that "[e]vidence that Detective Gerrard used a specific investigative technique (the use of jailhouse informants) in an improper fashion in other cases, and that he used the same investigative technique in [Rhone's] case, could certainly be used by a defense attorney to attach Detective Gerrard's credibility and his investigation" in his case. *Id.* According to Rhone, defense counsel "could have argued that Detective Gerrard was so desperate to close cases that he was willing to engage in improper police techniques and therefore his testimony could not be trusted." *Id.* Rhone contends that "[t]here is a reasonable probability that such argument could have impacted the verdict," thereby warranting a new trial. *Id.*

Rhone's claims are unavailing. Once again, Rhone's speculation about what a defense attorney could have done with the information fails to meet his burden of establishing that this after-discovered evidence warranted a new

- 17 -

trial. As the PCRA court stated, Rhone's "minimal factual development of such claims cannot invoke any form of relief for [Rhone]." PCRA Court Opinion, 4/24/24, at 10 (unnumbered). Indeed, Rhone does not dispute the Commonwealth's contention that Detective Gerrard did not testify about taking a statement from Everett or any other jailhouse informant. Commonwealth's Brief at 17-18. Thus, Rhone's claim would fail.

Lastly, Rhone asserts that should this Court decide that he is not entitled to relief based on the Commonwealth's suppression of any particular piece of evidence for failure to show prejudice, we "should nevertheless grant him relief because the cumulative effect of the constitutional errors he raise[d] render his trial fundamentally unfair, violating his right to due process." Rhone's Brief at 27 (citing **Commonwealth v. Hutchnson**, 25 A.3d 277, 319 (Pa. 2011)).

As recognized by the PCRA court, "[w]hile [Rhone] appears to characterize the alleged **Brady** violations as cumulatively prejudicing him, precedent is clear that "[]he cumulate impact of meritless **Brady** claims cannot be grounds for relief." PCRA Court Opinion, 4/24/24, at 10 (unnumbered) (citing **Commonwealth v. Lambert**, 884 A.2d 848, 857 (Pa. 2005). We would agree.

In sum, we find Rhone's sixth PCRA petition untimely, but even if we were to address Rhone's **Brady** claims, Rhone has failed to proffer evidence that would support the award of a new trial. Thus, considered together, they

would not provide a basis for relief. **Lambert**, **supra**. We therefore affirm the PCRA court's order denying Rhone's sixth PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/21/2025